WASHINGTON, R. & R. RICHARDSON Jr. vs. ROYALTON & WOODSTOCK
March,
1833.                              TURNPIKE COMPANY.

> If the plaintiffs make an averment in their declaration, which is necessary to be proved; the defendants have a right to disprove it, with suitable evidence.
>
> Where the charter of a turnpike company makes them liable to pay all damages, which may happen to any person from neglect of any bridge, the company is not liable for damages, if they build and constantly maintain a bridge of sufficient strength for all ordinary purposes, and the same is broken down, and private damages sustained by carelessly over loading the bridge with cattle.
>
> The company is not liable for accident.

This was an action commenced to the County Court counting upon the neglect of the defendants in maintaining and keeping in repair a bridge upon their road, over White River, whereby, the plaintiffs in driving cattle to Boston were damnified; said bridge having broke under the weight of said cattle, and two of them killed and others damaged by being precipitated into the stream. The issue being duly joined, the plaintiffs adduced evidence tending to prove that in November A. D. 1831, they, in company with one or two other individuals were passing through the town of Royalton in Windsor County, with a drove of fat cattle for the Boston Market, consisting of about ninety head, principally oxen and cows—that in passing the defendant's bridge across White River in Royalton, with said drove of cattle, the same, when said cattle were upon it, fell and precipitated eighteen or twenty head of cattle into the river below; that one or two of the cattle were killed, and some others badly injured. The plaintiffs gave further evidence tending to prove that said bridge was in a dilapidated state, and that some of the timbers composing the same were rotten. The plaintiffs gave in evidence also, the act of the Legislature incorporating the defendants, which is referred to as part of this case.

The defendants in support of the issue on their part offered evidence tending to prove that said bridge was, about three years before the injury complained of happened, built new, and that no part of said bridge had decayed; that the timber in said bridge was all sound at the time it fell with the plaintiff's cattle. And further, that said bridge was in the opinions of their witnesses, constructed in a good

workmanlike manner, and with strong timber of suitable size for such a bridge, and that it was sufficient and safe for travellers to pass with their carriages and loaded teams of the largest size used in the country.  To the admission of all the evidence offered by the defendants as aforesaid the counsel for plaintiffs objected, and the same was excluded by the court.  To which decision the defendants excepted.  The defendants in further support of said issue on their part introduced evidence tending to prove that said drove of ninety head of cattle were all driven on the said bridge without separating the drove; that the southern reach of said bridge fell, and that it was covered with cattle when it fell; that eighteen or twenty head of cattle fell with the bridge into the river below. That said bridge fell in consequence of the breaking of the string pieces by the weight of cattle upon them.

Washington,
March,
1833.

R. & R. Richardson Jr.
vs.
Royalton and Woodstock Turnpike Co.

The counsel for the defendants requested the Court to charge the jury,

1st.  That the defendants are bound to build and keep in repair bridges sufficient and safe for persons to pass with their carriages and loaded teams of the largest kind used in the county; and that the defendants are not liable in this action, if the jury find that the bridge, at the time it fell with the plaintiffs' cattle, was sufficient and safe for loaded teams of the largest kind used in the country to pass.

2d.  It was the duty of the plaintiffs to have seperated their drove of cattle and driven only a part of them over the bridge at a time.

3d.  That if the plaintiffs drove all the cattle on this bridge at once and broke it down, they cannot recover in this action because the injury was occasioned by their own carelessness.

But the Court refused so to charge the jury, but did charge them on this point: That the defendants were to a certain extent insurers of the sufficiency of their bridges, that is to say, they were responsible that their bridges should be of sufficient strength to support any weight which might be reasonably expected in the ordinary course of business to be transported on them by those who pass on the road and paid toll at their gates.  That as the defendants were

Washington,
March,
1833.

R. & R. Rich-
ardson, Jr.
vs.
Royalton and
Woodstock
Turnpike Co.

authorized to receive, and did receive toll for cattle in droves, they were resposible that their bridges should be sufficient to sustain any number of cattle which it is usual and customary to drive in one drove, in passing the bridge in the usual manner. That the drove in question was not, in the opinion of the Court, so unusually or unreasonably large as to vary the liability of the defendants; and that the plaintiffs were not legally bound to separate their drove for the purpose of passing the bridge. To this charge the defendants, also excepted. The several exceptions were allowed, and the case ordered to the Supreme Court for further consideration.

*Upham & Keith*, for defendants.—1. The evidence offered by the defendants, in support of the issue on their part, was improperly excluded by the Court below.

Upon the trial of this cause in the County Court, the plaintiffs introduced evidence tending to prove that the bridge which fell with the plaintiffs' cattle, was in a dilapidated state, and unsafe for persons to pass with teams, carriages, &c.

To rebut this evidence, and to support the issue on *their* part, the defendants offered to prove, *first,* That the bridge was built about two years before the injury complained of happened: That it was constructed with great care and caution: That the timber with which it was constructed, was sound, strong, and of a proper size for such a bridge. *Second,* That at the time the bridge fell with the plaintiffs' cattle, it was in good repair, and sufficient to sustain the heaviest loaded teams that usually pass through the country. *Third,* That the five string-pieces which broke and fell with the cattle, were perfectly sound. *Fourth,* That the injury was occasioned by the carelessness of the plaintiffs in driving an unreasonable number of their cattle on to the bridge at once.

To the admission of this evidence, the plaintiffs objected; and it was excluded by the County Court.

The first question presented is, was this evidence properly excluded? We maintain that it was not. Turnpike corporations, like towns, we admit, are answerable for any special damage which shall happen to any person or per-

sons, his or their teams or carriages, by means of any insufficiency or want of repair in their roads and bridges.

We insist, however, that the legal measure of duty as to the sufficiency of bridges, is, that they should be sufficient and safe for loaded teams of the largest kind used in the country. To go further, and require bridges sufficient to sustain buildings, when drawn over them, and whole droves of cattle, would be both unreasonable and unjust.

In the construction and preservation of roads and bridges, the law only requires the exercise of ordinary care and diligence.

In *Townsend* vs. *The Susquehannah Turnpike Company*, it was holden that the defendants were bound to bestow ordinary care and diligence in the construction of their bridges, and keeping them in repair, but are not responsible for accidents which do not arise from their neglect, or want of such ordinary care and skill.—6 John. Rep. 90.

If the defendants are liable at all in this action, it is upon the ground of *negligence;* and this negligence may consist in want of care in constructing the bridge, or in omitting to make necessary repairs.—*Vide* Charter of Co.— Laws of 1800, p. 60—6 John. Rep. 90.—1 Swift. Dig. 552.—*Noyes* vs. *Morristown*, 1 Vt. Rep. 353.

The plaintiffs therefore, were bound to prove that the injury complained of was occasioned by the *negligence* of the defendants, and without any fault on their part. For it cannot be presumed that the Legislature intended to provide a remedy for damages sustained by any man through his own wrong.—*Vide* 4 Mass. R. 422.—11 East. R. 60.— 2 N. H. R. 392.—6 Aik. R. 74.—7 Pick. 188.—7 Con. R. 86.—15 John. R. 250.—1 Mass. R. 153.

If we are correct in our views of the law, which should govern this case, the evidence offered by the defendants was certainly admissible.

2. The idea that towns and turnpike corporations are insurers, is certainly *new,* and we think unsupported by reason or authority.

Insurance is defined to be a contract, whereby one party, in consideration of a stipulated sum, undertakes to indemnify the other against certain perils and risks to which he is exposed, or against the happening of some e-

WASHINGTON,
*March,*
1833.

R. & R. Richardson, Jr.
*vs.*
Royalton and Woodstock Turnpike Co.

Washington,
   March,
   1833.

R. & R. Rich-
   ardson, Jr.
      vs.
Royalton and
   Woodstock
Turnpike Co.

vent. The defendants have received no compensation as insurers, and as such, cannot be made liable in this action.

3. It was not the province of the County Court to decide upon the facts in the case; they should have been submitted to the jury. And for this reason, a new trial should be granted.—*Vide Aylwin* vs. *Ulmer*, 12 Mass. R. 22.—*Tyler* vs. *Ulmer*, Ib. 163.

Instead of excluding the evidence offered *by the defendants*, it should have been submitted to the jury, and weighed by them : and they should have been instructed by the Court to return a verdict for the defendants, if they found the bridge sufficient to sustain the heaviest loaded teams usually driven through the country.

Whether or not an unreasonable number of cattle were driven on to the bridge at once, was a fact for the jury to find, and it should have been submitted to them under a proper charge from the Court.

4. The jury should have been instructed to return a verdict for the defendants, even if they should find the bridge insufficient to sustain a loaded team of the heaviest kind, provided they should find the weight of cattle upon it, when it fell, greater than that of a loaded team of the largest class usually driven through the country.

*P. Dillingham*, for plaintiffs.—The only question is, Did the County Court *err* in excluding testimony? We think not. The ground taken by the County Court, if we rightly understand it, is substantially this : That this Company were bound, by law, to maintain, at all times, a bridge *sufficient* to bear over in safety, and without breaking down, all *teams*, *loads*, or *droves of cattle*, which might attempt to pass it, while travelling on the Company's turnpike in the course of doing the ordinary business of the country.

If the County Court did not mistake the law, in *thus deciding*, then the testimony offered by defendants was properly excluded ; and, certainly, there was no misapplication of terms—much less was there *error* in saying the Company were insurers, so far as their liability extended to pay damages to those travelling on their road and over their bridges.

WASHINGTON,
March,
1833.

R. & R. Rich-
ardson, Jr.
vs.
Rayalton and
Woodstock
Turnpike Co.

A leading consideration with the Legislature, in incorporating every Turnpike Company, must have been, not only that they should keep in repair good roads, but that they should furnish *safe and sufficient bridges*, for every possible case of passing in the transaction of the common business of the country usually requiring travel upon public roads.

The Legislature have not left their *intent* to be *inferred.* In the Act incorporating this Company, it is provided, "That said Company *shall be liable* to pay all damages which may happen to any person, from whom toll is demandable, or any other persons, from *neglect of any bridge*, or want of repairs in said road."—Acts of 1800, page 63, Sec. 5. What is here meant by "*neglect of any bridge?*" A bridge must be a *sufficient* one, or it is "neglected," or in other words, is "*bad and insufficient.*" To what extent must a bridge be sufficient? Can it be *sufficient* reasonably, or within the intent of the Legislature, short of sufficiency to the full extent required by the decision of the County Court? What other rule than this, could be adopted, which would be both reasonable and general? *Can the number of bullocks*—the *weight of any load*, or the *measure of any commodity* passing a bridge in the course of ordinary business, be fixed at any point, so as to form a safe test of the *sufficiency* or *insufficiency* of such bridge?

What other rule then, can this Court adopt, which shall carry into effect the intent of the Legislature—be salutary in its operation—certain in all cases—and of easy application, than *that*, which in this case, and all similar ones, makes the *sufficiency* or *insufficiency* of the bridge, depend upon the *fact*, of whether it stands secure, or breaks down, under any and every load drawn upon it, for the purpose of passing, in transacting any of the usual business of the community? This leaves out cases of unusual and extraordinary *business*; as well as those, should they ever occur, where there was an obvious and malicious intention to break down a bridge, instead of a *bona fide* one of passing in safety.

A decision by this Court, that fell short of carrying the liability of this Company to the extent laid down by the County Court, would, absolutely, be construing the act in-

WASHINGTON,
March,
1833.

R. & R. Rich-
ardson, Jr.
vs.
Royalton and
Woodstock
Turnpike Co.

corporating this Company in *restraint of business, of common and ordinary business.* The traveller is *bound* in all cases *to the Company* to pay his toll, in proportion to what he drives; and should this Court decide that the Company's *liability to him* shall cease in case he carries a *heavy load,* they thereby increase his liability a *thousand fold.* For when the Court decides that an individual, while travelling, has been guilty of some act of *imprudence,* which exempts the *Company* from all liability to *him,* it follows as certainly as any effect can follow its cause, that *that* same *imprudent act* makes *him* liable to the Company for the full amount of their loss, arising from that act.—7 Pick. R. 188.

The opinion of the Court was pronounced by

BAYLIES, J.—The 5th Sec. of the Act establishing a corporation by the name of " *The Royalton and Woodstock Turnpike Company,*" among other things says, that the " said corporation shall be liable to pay all damages which may happen to any person from whom toll is demandable, or any other person, *from neglect of any bridge,* or *want of repairs in said road.*"

The plaintiffs, in their declaration, have averred in substance, that on the 5th of November, 1831, the defendants' bridge over White River, on said turnpike road in said Royalton, *from the neglect of the defendants,* had become, and was decayed, rotten, weak, and insufficient, so that when the plaintiffs were, then and there, driving their fat cattle to Boston market, on said road across said river upon said bridge, the same broke, gave way, and fell with some of said cattle into said river, and by the fall two of the cattle were killed, and others were greatly bruised and injured, so that the platntiffs suffered two hundred dollars damages to their said cattle from the defendants' neglect of their said bridge, &c.

It was necessary for the plaintiffs to make this *averment* to bring the case within the act; and to prove it on trial.

The plaintiffs gave evidence to the jury tending to prove this *averment;* and when the defendants offered evidence tending to disprove it, the plaintiffs objected, and the Court excluded the evidence. If it was necessary for the plaintiffs to prove their *averment* to support their action,

it was competent for the defendants to disprove it; and no good reason can be assigned, why the Court excluded their evidence.

WASHINGTON,
March,
1833.

R. & R. Rich-
ardson, Jr.
vs.
Royalton and
Woodstock
Turnpike Co.

What *strength* in the defendants' bridge would be sufficient to exonerate them of negligence, so as not to be liable, in case the bridge should be broken down, and private injury sustained, has not, to my knowledge, been decided.

It would *seem* to be the duty of the defendants to build, and constantly maintain bridges of sufficient strength, to bear up the heaviest loads, that usually pass from and to market on their turnpike road : Toll is paid the defendants for the passage of such loads, and the public have a right to require sufficient strength in their bridges to bear them up.

In the case at bar, it is evident that the defendants' bridge was not of sufficient strength to sustain the cattle that were upon it : The bridge broke, and precipitated the cattle into the river. Whether those cattle were considerably heavier than one of the largest loads which usually passed said bridge, drawn by six horses on a large waggon, does not fully appear.—Such load, waggon and horses, would probably weigh eight or ten tons; and if the bridge was safe and sufficient to bear up this weight, the defendants could not be charged with negligence in not building and maintaining a bridge of sufficient strength for all ordinary purposes.

But if the plaintiffs carelessly drove their cattle upon the bridge, in a huddled position, so as to get a greater weight upon the bridge than it could bear, and broke it down, when it was of sufficient strength for all ordinary purposes, the plaintiffs are not entitled to recover damages for injuries which they have suffered by their own folly. The principles which I have advanced receive support from the following *dicta :*

" The defendants are bound to bestow ordinary care and diligence in the construction and preservation of their bridges. They are not responsible for *accidents*, if those *accidents* do not arise from the want of this ordinary care and skill."—6 T. R. 90.

" Where the injury is owing to one's own negligence,

WASHINGTON, *March,* 1833. or want of ordinary care, and he could easily have avoided the obstruction, then no action will lie."—11 East. 61.

R. & R. Richardson, Jr. *vs.* Royalton and Woodstock Turnpike Co. The party injured by a defect in a bridge, must be in no fault himself. "For it cannot be presumed, that the act intended to provide a remedy for damages sustained by a-ny man, through his own wrong."—4 Mass. R. 423.

"If from fool-hardiness, one should plunge his horse into water, which by a flood had covered a causeway, he knowing it to be so, or if he should enter upon a bridge, which he saw was weakened by a storm, he ought not to be indemnified for his carelessness."—7 Pick. R. 188.

"Though highways are so low as to be overflowed, towns are not liable for injuries which happen on them, if it was imprudent to pass them in such a condition, or if they were passed unskilfully."—2 N. H. Rep. 392.

In the case at bar, the County Court should have admitted the evidence which was offered by the defendants, and excluded by the Court; and should have instructed the jury according to the foregoing principles of law; but inasmuch as the County Court neglected their duty in these matters,

Their judgement is reversed, and

A new trial granted.